UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

HALIL ZENGI, Petitioner,

v. Civil Action No. 3:26-cv-628-RGJ

JEFF TINDALL, et al., Respondents.

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Petition for Writ of Habeas Corpus [DE 1] filed by Petitioner Halil Zengi ("Petitioner"). The United States as counsel for the Federal Respondents ("Respondents")[1] responded [DE 9] and Petitioner replied [DE 11]. Petitioner also moved to expedite [DE 14] this Court's decision on Petitioner's Petition. Respondents have not responded, but the Court finds it is able to resolve the matter without a response. This matter is ripe. For the reasons below, Petitioner's Petition for Writ of Habeas Corpus [DE 1] and motion to expedite [DE 14] are **GRANTED**.

## I. BACKGROUND

Petitioner is a native and citizen of Turkey. [DE 1 at 6; DE 9 at 80]. He entered the United States without inspection near El Paso, Texas on May 31, 2022. [DE 1 at 6]. He was detained soon after entering the United States and issued a Form I-860, Notice and Order of Expedited Removal [DE 9-1], on June 6, 2022. [DE 9 at 80]. On June 7, 2022, he was granted parole "pursuant to . . . section 212(d)(5)(A) of the Immigration and Nationality Act," codified at 8 U.S.C. § 1182(d)(5)(A), for a period of one year. [DE 1-2 at 28].

[1] 28 U.S.C. § 517 allows the Office of the United States Attorney to make appearances in court to attend to the United States' interests. Respondents submitted responses in this case to attend "to the United States' interests to the extent that the petition also names a county official as a respondent." [DE 10 at 91 n.1].

On February 1, 2023, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal with United States Citizenship and Immigration Services ("USCIS"). [*See* DE 1-4]. USCIS denied [DE 1-5] that application for lack of jurisdiction, informing Petitioner that Petitioner could "have [his] claim of fear considered by an asylum officer through the credible fear screening process[.]" [DE 1-5 at 35].

Petitioner's parole expired on June 7, 2023. [DE 1 at 6]. Despite this, Immigration and Customs Enforcement ("ICE") did not re-detain him, instead continuing to supervise him through ICE reporting procedures. [*Id.*].

On December 31, 2025, Petitioner's spouse, a U.S. citizen, filed a Form I-130, Petition for Alien Relative [DE 1-6], with USCIS on Petitioner's behalf. [DE 1 at 7]. On February 18, 2026, Petitioner filed a Form I-485, Application to Register Permanent Residence or Adjust Status [DE 1-7], based on his Spouse's I-130. Petitioner also filed a Form I-765, Application for Employment Authorization [DE 1-14]. USCIS scheduled Petitioner and his spouse to appear for an in-person interview at the USCIS Louisville Office on August 12, 2026. [DE 1 at 7]. Petitioner attended the interview. [*Id.*] Immediately after the interview, Petitioner was taken into Department of Homeland Security custody. [*Id.*].

On August 13, 2026, USCIS approved Petitioner's I-130 application. [DE 1 at 7-8; DE 1-10]. However, on August 14, 2026, USCIS administratively closed Petitioner's I-485. [DE 1 at 7-8].

On October 6, 2026, Petitioner was given a credible-fear interview by an asylum officer. [DE 14 at 121]. That asylum officer found that Petitioner "has demonstrated a credible fear of persecution or torture," "vacated" Petitioner's "Section 235(b)(1) [codified at 8 U.S.C.

§ 1225(b)(1)] order . . . pursuant to 8 C.F.R. 208.30," and "ordered [Petitioner] to appear before an immigration judge . . . on [November 25, 2026][.]" [DE 14-1].

Petitioner is detained at Oldham County Jail in La Grange, Kentucky. [DE 1 at 5]. Petitioner has not received a bond hearing. [DE 1 at 9; *see also* DE 14 at 124]. Petitioner filed a Petition for Writ of Habeas Corpus on August 15, 2026, requesting release or, in the alternative, a bond hearing. [DE 1 at 22-23].

## II. DISCUSSION

### A. Petitioner is detained under Section 1226(a), not Sections 1225(b)(1)(B)(ii) and (iii)(IV).

In the Petition, Petitioner asserts that his continued detention is unlawful and violates due process and statutory rights under the Immigration and Nationality Act (INA) because he is properly detained, if at all, under Section 236 of the INA, codified at 8 U.S.C. § 1226(a). [DE 1 at 9-10, 14]. Section 1226(a) provides that noncitizens in removal proceedings may be detained but are eligible for release on bond. *See* 8 U.S.C. § 1226(a).

Respondents argue that Petitioner is properly detained under 8 U.S.C. §§ 1225(b)(1)(B)(ii) and (iii)(IV), which authorize mandatory detention. [DE 9 at 81] *See* 8 U.S.C. §§ 1225(b)(1)(B)(ii), (iii)(IV). According to Respondents,

> 8 U.S.C. § 1225(b)(1)(B)(ii) mandates [Petitioner's] detention because he was both placed in expedited removal proceedings and is pursuing an asylum claim. For anyone in expedited removal who claims credible fear, detention is mandated under 8 U.S.C. § 1225(b)(1)(B)(ii) and (b)(1)(B)[(iii)(IV)].[2] . . . Even "applicants who are found [by an asylum officer] to have a credible fear may also be detained pending further consideration of their asylum applications." *Id.*, citing 8 U.S.C. § 1225(b)(1)(B)(ii). "In sum, §§ 1225(b)(1) and (b)(2) mandate detention of aliens

[2] Respondents refer here to § 1225(b)(1)(B)(ii) and § 1225(b)(1)(B)(iv); however, this appears to be a scrivener's error. Section 1225(b)(1)(B)(iv) does not relate to detention and instead discusses "information about interviews." *See* § 1225(b)(1)(B)(iv). Elsewhere in Respondents' argument, Respondents refer to § 1225(b)(1)(B)(iii)(IV), which does relate to detention. [*See* DE 9 at 81]. Accordingly, the Court assumes Respondents intended to refer to § 1225(b)(1)(B)(iii)(IV) rather than § 1225(b)(1)(B)(iv) in this passage.

> throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018).

[DE 9 at 81]. Respondents therefore conclude that Petitioner has not been deprived of due process because "the Supreme Court's decision in [*Department of Homeland Security v.*] *Thuraissigiam*, 591 U.S. [103,] 106-07, 131 [(2020)] . . . upheld mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) as consistent with due process." [DE 9 at 84].

The argument that a noncitizen remains in mandatory detention under § 1225(b)(1)(B)(ii) after being found by an asylum officer to have a credible fear of persecution and being placed into proceedings before an immigration judge was considered and rejected by this Court in *Singh v. Hott*, No. 4:26-CV-256-DJH, 2026 WL 1880217, at *4 (W.D. Ky. June 30, 2026) (concluding that the petitioner was "detained under § 1226(a), not § 1225(b)(1)(B)(ii), because an officer finished considering his asylum application" when petitioner was placed into standard removal proceedings before an immigration judge). Although not binding, the Court finds the analysis in *Singh* to be persuasive. Accordingly, consistent with *Singh*'s reasoning and with this Court's prior opinion in *Kumar v. Lewis, et al.*, No. 4:26-cv-470-RGJ, 2026 WL 3120731 (W.D. Ky. Oct. 19, 2026), the Court finds that § 1226, rather than § 1225, governs Petitioner's detention.

Relevant here, Section 1225(b)(1) governs "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." § 1225(b)(1). "Section 1225(b) requires mandatory detention" for noncitizens subject to expedited removal under § 1225(b)(1). *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 293 (E.D.N.Y. 2025). The statute states in relevant part:

> (A) Screening
>
> (i) In general

> If an immigration officer determines that an alien ... who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum ... or a fear of persecution.
>
> (ii) Claims for asylum
>
> If an immigration officer determines that an alien ... who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title and the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer.

§ 1225(b)(1)(A)(i)–(ii). Thus, "[a]pplicants can avoid expedited removal by claiming asylum." *Thuraissigiam*, 591 U.S. at 109. "The point of th[e] screening interview is to determine whether the applicant has a 'credible fear of persecution.'" *Id.* (quoting § 1225(b)(1)(B)(v)). "The applicant need not show that he or she is in fact eligible for asylum—a 'credible fear' equates to only a 'significant possibility' that the alien would be eligible." *Id.* (emphasis omitted) (quoting § 1225(b)(1)(B)(v)).

Section 1225(b)(1)(B)(ii) provides that if an asylum officer "determines at the time of the [credible-fear] interview that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). "The plain meaning of [that provision] is that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum." *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (second alteration in original) (discussing §§ 1225(b)(1)(B)(ii), (b)(2)(A)). Once consideration of the asylum application ends, "detention under § 1225(b) must end as well." *Id.* at 297. Pursuant to accompanying regulations, upon an asylum officer's finding of credible fear, USCIS "has complete discretion to either issue a Form I-862, Notice to Appear, for full consideration of the asylum . . . claim in [standard removal] proceedings under [8 U.S.C. § 1229a], or retain jurisdiction

over the application for asylum pursuant to [8 C.F.R.] § 208.2(a)(1)(ii) for further consideration in a hearing pursuant to [8 C.F.R.] § 208.9." 8 C.F.R. § 208.30(f); *see Thuraissigiam*, 591 U.S. at 110 (discussing 8 C.F.R. § 208.30(f)). In a standard removal hearing, an immigration judge considers the noncitizen's asylum application. *See Thuraissigiam*, 591 U.S. at 110. But pursuant to 8 C.F.R. § 208.9, an asylum officer may further consider the asylum application via an interview and issue a decision. *See* 8 C.F.R. § 208.9(b), (d); *see also* 8 C.F.R. § 208.14(b)–(c) (providing authority for asylum officer to grant or deny asylum applications).

Here, Petitioner received a credible-fear interview before an asylum officer, the asylum officer found that Petitioner had a credible fear of persecution, and Petitioner was then "ordered to appear before an immigration judge[.]" [DE 14-1 at 129]. Section § 1225(b)(1)(B)(ii) could only authorize mandatory detention until "the officer's consideration of [his] asylum application concluded because [Petitioner] was placed in standard removal proceedings before an immigration judge." *Singh*, 2026 WL 1880217, at *3. Indeed, the Notice to Appear that DHS issued Petitioner after the interview specifically states that the Notice "is being issued after an asylum officer has found that [Petitioner] has demonstrated a credible fear of persecution or torture" and the "Section [1225(b)(1)] order was vacated" pursuant to 8 C.F.R. 208.30. [DE 14-1 at 129]. By issuing a Notice to Appear and placing Petitioner in standard removal proceedings, USCIS thereby declined to "retain jurisdiction over the application for asylum pursuant to § 208.2(a)(1)(ii) *for further consideration* in a hearing pursuant to § 208.9," 8 C.F.R. § 208.30(f) (emphasis added). This decision means that Petitioner's "detention under § 1225(b) must end as well." *Jennings*, 583 U.S. at 299.

Although Petitioner's asylum application technically remains under consideration, [DE 14 at 121 (noting that Petitioner has "a master calendar hearing set for November 25, 2026" in front

of an immigration judge); *see also* DE 14-1 at 129], § 1225(b)(1)(B)(ii) does not suggest that an immigration judge constitutes an "immigration officer" who "consider[s]" Petitioner's application under that provision. *See Jennings*, 583 U.S. at 299; 8 U.S.C. § 1101(a)(18) (defining immigration officer); 8 U.S.C. § 1101(b)(4) (defining immigration judge); *see also dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at *8 n.11 (D. Mass. Aug. 14, 2025) (distinguishing between statutory definition of "immigration officer" and "immigration judge" to conclude that petitioner was not detained under § 1225(b)(1)(B)(ii) after he received "a positive credible fear finding" from an immigration officer and was placed in standard removal proceedings before an immigration judge); *cf. Kumar*, 2026 WL 3120731 at *3 (finding that the Board of Immigration Appeals did not constitute an "'immigration officer' who 'consider[s]' [Petitioner's] application under [§ 1225(b)(1)(B)(ii)]") (quoting *Jennings*, 583 U.S. at 299).

Accordingly, consistent with the Court's prior opinion in *Kumar*, 2026 WL 3120731, the Court concludes that Petitioner is detained under § 1226(a), not § 1225(b)(1)(B)(ii).

However, even prior to Petitioner receiving the credible-fear interview with the asylum officer and being placed in front of an immigration judge, the Court would have found that Petitioner was detained under § 1226(a) rather than §§ 1225(b)(1)(B)(ii), (iii)(IV). Section 1225(b)(1)'s processes are by the statute's text limited to only certain noncitizens. As the court described in *Martinez Herrera v. Olson*, "§ 1225(b)(1) 'governs noncitizens: (1) who are inadmissible for lack of proper entry documents . . . and (2) who fall within either [§ 1225(b)(1)(A)(i) (as aliens arriving in the United States) or (iii)(II)]." *Martinez Herrera v. Olson*, No. 4:26-CV-52-DJH, 2026 WL 561101, at *3 (W.D. Ky. Feb. 27, 2026) (quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 293 (E.D.N.Y. 2025), appeal dismissed, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026) (citing §§ 1225(b)(1)(A)(i), (iii)(II))

(internal quotation marks omitted) (emphasis added). Petitioner, at the time of his detention, was not covered by either § 1225(b)(1)(A)(i) or § 1225(b)(1)(A)(iii)(II).

Section 1225(b)(1)(A)(iii)(II) covers noncitizens who "ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown . . . that [they] ha[ve] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). "Courts have thoroughly examined the phrase 'who has not been . . . paroled into the United States' to conclude that § 1225(b)(1)(A)(iii)(II) does not 'authorize[] expedited removal and the detention of noncitizens who . . . were paroled into the United States under Section 1182(d)(5)(A),'" even if their parole expires or is terminated. *Martinez Herrera*, 2026 WL 561101, at *4 (quoting *Rodriguez-Acurio*, 811 F.Supp.3d at 297) (concluding that despite petitioner's re-detention after her parole had expired, she was not covered by § 1225(b)(1)(A)(iii)(II)). Here, there is no dispute that Petitioner was paroled on June 7, 2022; thus, he did not fall within § 1225(b)(1)(A)(iii)(II).

Section 1225(b)(1)(A)(i) covers noncitizens who are "arriving in the United States." *See* 8 U.S.C. § 1225(b)(1)(A)(i). Here, Petitioner was paroled for one year after his initial detention in June 2022. [DE 9 at 80]. At the time of his detention in August 2026, he had resided in the United States for over four years—well beyond his initial one-year period of parole. [*Id.*]. Accordingly, any argument that Petitioner was an "arriving alien" when he was detained in 2026 must rest on a legal concept known as the "entry fiction" doctrine. *See generally Guerra v. Mullin*, No. 4:26-cv-430-RGJ, 2026 WL 3027146 (W.D. Ky. Oct. 8, 2026) (discussing the entry fiction). In *Guerra v. Mullin* this Court joined other courts in the Sixth Circuit and across the country in concluding that noncitizens who have been paroled and have resided in the United States for years are not "arriving

aliens." *See Guerra*, 2026 WL 3027146 (collecting cases). As this Court explained, the Sixth Circuit's decision in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) "stands for the proposition that the entry fiction does not control when an alien has resided within the United States for years." *Id.* at *4 (quoting *Jean v. Bullock*, No. 2:26-cv-02571-BCL-ATC, 2026 WL 1531056, at *3 (W.D. Tenn. May 30, 2026)) (internal quotation marks omitted). Instead, this Court reasoned,

> The parole statute provides that, upon termination of parole, a petitioner's "case shall continue to be dealt with *in the same manner as that of any other applicant for admission to the United States*." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). And the process for detaining other applicants for admission within the United States is clear: "Section 1226 generally governs the process of arresting and detaining aliens once inside the United States." *Chavez v. Dir. of Detroit Field Off.*, No. 4:25-cv-02061-SL, 2025 WL 2959617, at *4 (N.D. Ohio Oct. 20, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018)). *See Lopez-Campos*, 175 F.4th at 722 ("Put differently, § 1225(b)(2)'s mandatory detention scheme applies to certain noncitizens who seek admission into the country, whereas § 1226's permissive detention scheme applies to all other noncitizens pending a decision on their removability, with exceptions.").

*Id.* at *4.

Here, Petitioner was paroled under the same parole statute and had resided in the United States for over four years prior to his detention in August 2026. [*See* DE 1-2 at 28 ("[ICE] has decided to parole you from its custody pursuant to its authority under section 212(d)(5)(A) of the Immigration and Nationality Act," codified at 8 U.S.C. § 1182(d)(5)(A))]. Accordingly, he was not at that time an "arriving alien" and therefore was not covered by § 1225(b)(1)(A)(i).

Because Petitioner did not fall under either § 1225(b)(1)(A)(iii)(II) or § 1225(b)(1)(A)(i), he was not subject to the processes of § 1225(b)(1) at the time of his initial detention in August 2026, including the § 1225(b)(1)(B) asylum interview procedure and the provisions which require detention during that process, §§ 1225(b)(1)(B)(ii), (iii)(IV). Instead, like the petitioner in *Guerra*

who similarly remained in the United States after his parole expired, § 1226(a) applied to Petitioner even before he was placed into proceedings before an immigration judge.

**B. Due Process**

Petitioner asserts that his continued detention without a bond hearing violates (1) the Immigration and Nationality Act and (2) the Due Process Clause. [DE 1 at 9, 14]. The Court first turns to Petitioner's contention that his continued detention without a bond hearing violates due process under the Fifth Amendment. Because the Court concludes that it does, the Court need not reach Petitioner's other basis for habeas relief.

Having determined that Petitioner's detention is governed by § 1226(a), Respondents' arguments as to the due process required by §§ 1225(b)(1)(B)(ii) and (iii)(IV) are futile. [*See* DE 9 at 84 ("[*Thuraissigiam*] forecloses [Petitioner's due process claim], as that case upheld mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) as consistent with due process.")]. Like the petitioners in *Lopez-Campos*, Petitioner has "a liberty interest to be free from detention." *Lopez-Campos*, 175 F.4th at 734. Deprivation of that interest "without bond under § 1226(a) [is] a deprivation of liberty that violates [his] due process rights" and makes his continued detention unlawful. *Id.*

**C. Remedy**

The proper remedy for unlawful executive detention is generally release. *See Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("[C]ourts across the country have ordered the release of individuals stemming from ICE's illegal detention."); *Minarcaja Concha v. Lyons*, 818 F. Supp. 3d 367, 390 (E.D.N.Y. 2026) ("Release from detention is the typical remedy for unlawful executive detention.") (cleaned up); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). *See also*

*Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention.").

Release is not the only remedy, however. Historically, "common-law habeas corpus was, above all, an adaptable remedy," whose "precise application and scope changed depending upon the circumstances." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). The writ's "most extensive" role at common law was "in cases of pretrial and noncriminal detention, where there had been little or no previous judicial review of the cause for detention." *Id.* at 780. In *Boumediene*, the Supreme Court made clear that "when the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority . . . to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." *Id.* at 787.

The Court concludes that release is necessary because Petitioner is currently being held in mandatory detention and has been for over two months. As such, his continued dentition, however transitory, is unlawful. Accordingly, the Court will order Petitioner's release. This is in line with the remedies fashioned by other district courts in this circuit. *See*, *e.g.*, *Salinas v. Woosley*, No. 4:25-CV-121-DJH, 2025 WL 3243837, at *5 (W.D. Ky. Nov. 20, 2025) (ordering release and requiring a bond hearing before further re-detention); *Monge-Nunez v. Ladwig*, No. 2:25-CV-03043-TLP-ATC, 2025 WL 3565348, at *7 (W.D. Tenn. Dec. 12, 2025) (ordering release pending a bond hearing). Moreover, "[i]n recent months, courts across the country have ordered the release of detainees in similar situations" where the government has articulated no legitimate interest in detaining individuals who are neither flight risks nor dangers to the community. *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor

of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13–14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention.").

However, the Court will not require Respondents to hold a bond hearing following Petitioner's release. *But cf. Monge-Nunez*, 2025 WL 3565348, at *7. Nevertheless, should Respondents decide to re-detain Petitioner, absent a material change in circumstances, they must provide Petitioner with a bond hearing pursuant to Section 1226(a).

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Petition for Writ of Habeas Corpus [DE 1] and **ORDERS** the following:

(1) Respondents are directed to release Petitioner immediately because of the unlawful detention in violation of his due process rights; and

(2) the United States must certify compliance with the Court's order by a filing on the docket by **November 17, 2026.**

**IT IS FURTHER ORDERED** that Petitioner's motion to expedite [DE 14] is **GRANTED**.

Rebecca Grady Jennings, District Judge
United States District Court

November 16, 2026